UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHAD EVANS, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:05CV1123 (TIA) |
| ) | |
| vs. ) | |
| ) | |
| YORK PICTURES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT LOOSE CANNON FILMS, INC.'S
MOTION TO DISMISS COUNTS V AND VIII**

This matter is before the Court on Defendant Loose Cannon Films, Inc.'s Motion to Dismiss Counts V and VIII. Comes now Plaintiff Chad Evans, by attorney, and states the following in opposition to said Motion:

## I. STATEMENT OF FACTS

Plaintiff Chad Evans is a composer and musician. He filed his Second Amended Complaint in nine (9) counts.

In Counts II, Plaintiff alleges that Loose Cannon Films, Inc. (hereinafter "Loose Cannon") violated the U.S. Copyright Act, 17 U.S.C. Sec. 17 U.S.C. Sec. 101 et seq., by producing, re-producing, distributing, and selling, all without authorization, Plaintiff's copyrighted recordings contained within a motion picture / video entitled "Hairdo U." Second Am. Comp., Count II, paras. 20-21.

In Count V, Plaintiff alleges that Loose Cannon Films violated his right to privacy by misappropriating his name on Loose Cannon's packaging of "Hairdo U" as a composer of the original music score of "Hairdo U." Second Am. Comp., Count V, paras. 47 & 48..

1

In Count VIII, Plaintiff alleges that Loose Cannon violated his right to publicity by using his name on the packaging of "Hairdo U" to obtain a commercial advantage. Second Am. Comp., Count VIII, paras. 72-73.

## II. ARGUMENT

### A. EMBARRASSMENT IS NOT AN ELEMENT OF THE CLAIMS

Loose Cannon's reliance on <u>Y.G. vs. Jewish Hospital</u>, 795 S.W.2d 488 (Mo.App. 1990) for the proposition that embarrassment is an element of a claim for violation of the right to privacy tort of misappropriating one's name is misplaced. In <u>Y.G.</u>, the Missouri Court of Appeals twice recognized that violation of the right to privacy "is not one tort, but a complex of four." Loose Cannon here attempts to misapply an element of one such right to privacy tort, described in <u>Y.G.</u> as "public disclosure of embarrassing private facts about the plaintiff," within a different and separate right to publicity tort, distinguished an characterized in <u>Y.G.</u> as "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." <u>Id.</u>, 795 S.W.2d at 497. It is the "appropriate, for the defendant's advantage…" tort that Plaintiff brings here, not the "public disclosure of embarrassing private facts…" tort. The actual claim brought here, unlike the inapplicable "public disclosure of embarrassing private facts about the plaintiff" tort, does not require showing of embarrassment.

The <u>Y.G.</u> court twice distinguished the four different right of privacy torts. First, that court observed:

> "…these four torts may be described as follows:
> 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
> 2. Public disclosure of embarrassing private facts about the plaintiff.
> 3. Publicity which places the plaintiff in a false light in the public eye.
> 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness."

Id. Then, the Y.G. court recited Restatement (Second) of Torts (1977) which also recognizes the same distinction between these four difference torts:

"(2) The right of privacy is invaded by
(a) unreasonable intrusion upon the seclusion of another, as stated in Sec. 652B; or
(b) appropriation of the other's name or likeness, as stated in Sec. 652C; or
(c) unreasonable publicity given to the other's private life, as stated in Sec. 652D; or
(d) publicity that unreasonably places the other in a false light before the public, as stated in Section 652E."

Y.G., 795 S.W.2d at 498. The Restatement (Second) of Torts (1977), Sec. 652C, which describes Plaintiff's claim brought in Count V, provides, "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Id. By contrast, Sec. 652D of Restatement (Second) of Torts (1977), which describes the tort of "public disclosure of embarrassing private facts…" provides:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
(a) would be highly offensive to a reasonable person, and
(b) is not of legitimate concern to the public."

Id.; See copy of Restatement (Second) of Torts (1977) attached hereto as "Exhibit 1."

Y.G. proceeds to only examine the elements of the "public disclosure of embarrassing private facts…" tort which requires showing of "embarrassment," but the Y.G. court did not consider the elements of the separate and different "appropriation, for the defendant's advantage, of the plaintiff's name or likeness" claim asserted by Plaintiff herein. Moreover, the Y.G. court did not address the any right of publicity tort in any manner. Id.

However, in Doe a/k/a Twist vs. TCI Cablevision (hereinafter "Twist"), 110 S.W.3d 363 (Mo. 2003), the Missouri Supreme Court did expressly set for the elements of the right to privacy and publicity torts based on appropriation of name or likeness for the defendant's advantage. Id., 110 S.W.3d at 368-69. Specifically, the Missouri Supreme Court held:

3

> Despite the differences in the types of damages that may be recovered, the elements of the two torts are essentially the same. To establish the misappropriation tort, the plaintiff must prove that the defendant used the plaintiff's name without consent to obtain some advantage. Nemani vs. St. Louis Univ., 33 S.W.3d 184, 185 (Mo. banc 2000); Haith [vs. Model Cities Health Corp., 704 S.W.2d 684,] at 687 [(Mo.App. 1986)]. In a right of publicity action, the plaintiff must prove the same elements as in a misappropriation suit, with the minor exception that the plaintiff must prove that the defendant used the name to obtain a *commercial* advantage. RESTATEMENT (THIRD) OF UNFAIR COMPETITION sec. 46; *see also* RESTATEMENT (SECOND) OF TORTS sec. 652C cmt. b. (explaining that, in contrast, the misappropriation of name tort applies when plaintiff's name is used for commercial *or* non-commercial advantage). Given the similarity of elements of the two actions, Missouri cases analyzing the tort of misappropriation of name are pertinent to our recognition of a right of publicity claim.

Twist, 110 S.W.3d at 368-69. Thus, the Missouri Supreme Court expressly held that the elements of the torts of violation of right to privacy and publicity torts based on appropriation of the name or likeness for the defendant's advantage do not include embarrassment. Id.

Significantly, the Y.G. decision, relied upon and misapplied by Loose Cannon, expressly warned against the confusion created by Loose Cannon herein:

> "It should be obvious at once that these four types of invasion may be subject, in some respects at least, to different rules; and that when what is said as to any one of them is carried over to another, it may not be at all applicable, and confusion may follow."

Id., 795 S.W.2d at 497.

### B. PLAINTIFF'S CLAIMS FOR USE OF HIS NAME ARE NOT PREEMPTED

Loose Cannon argues that Plaintiff's claims for violation of his right to privacy and right to publicity based on misappropriation of his name are preempted under the Copyright Act, 17 U.S.C. Sec. 301, although Loose Cannon does not use the term "preemption." However, such argument has been raised and rejected in multiple federal appellate courts. In sum, these courts find no preemption based on an obvious distinction: while the Copyright Act protects misuse of a protected work, state law claims for violation of rights to privacy and publicity protect a different interest, use of one's own name, image and likeness.

4

The leading case is <u>Brown vs. Ames</u>, 201 F.3d 654 (5th Cir. 2000). The plaintiffs brought (1) copyright infringement claims and (2) claims for violation of their rights to privacy and publicity based on the defendant's use of their names on compact discs, tapes, and catalogs which contained the copyrighted matter. The <u>Brown</u> court first recited the Copyright Act's preemption provision, 17 U.S.C. Sec. 301(a), which states:

> "On or after January 1, 1978, all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. . . ."

<u>Brown</u>, 201 F.3d at 657; quoting 17 U.S.C. Sec. 301(a). That court observed:

> "Section 301 requires the fulfillment of two conditions. First, the content of the protected right must fall in the subject matter of copyright. Second, the nature of the rights granted under state law must be equivalent to any of the exclusive rights in the general scope of a federal copyright."

<u>Id</u>., 201 F.3d at 657; citing <u>Daboub vs. Gibbons</u>, 42 F.3d 285, 289 (5th Cir. 1995) and Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> Sec. 1.01[B] (1999). Then, the <u>Brown</u> court soundly rejected the defendant's preemption argument:

> "Appellants argue strenuously that appellees have not presented an independent action for misappropriation. Because appellees' names and/or likenesses were used to identify their musical works in Collectibles' CD's, tapes and catalogs, appellants assert that the core of the misappropriation and copyright infringement claims is the same, compelling preemption under section 301 of the misappropriation claims.
> **Appellants' argument ignores, however, that the content of the right protected by the misappropriation tort does not fall into the subject matter of copyright, as section 301 requires.** As the district court correctly recognized, the tort for misappropriation of name or likeness protects "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." Restatement (Second) of Torts Sec. 652C (1977). **In other words, the tort of misappropriation of name or likeness protects a person's persona. A persona does not fall within the subject matter of copyright - it does not consist of 'a 'writing' of an 'author' within the meaning of the Copyright Clause of the Constitution.'** <u>Nimmer</u>, <u>supra</u>, Sec. 1.01[B][1][c]; <u>Jarvis vs. A&M Records</u>, 827 F.Supp. 282, 297 (D.NJ 1993); <u>Bi-Rite</u>

5

> Enterprises, Inc. vs. Button Master, 555 F.Supp. 1188, 1201 (S.D.NY 1983); <u>Apigram Publishing Co. vs. Factors, Etc., Inc.</u>, 1980 U.S. Dist. Lexis 9738, 1980 WL 2047 (N.D.Ohio July 30, 1980)(available on WESTLAW); <u>Lugosi vs. Universal Pictures</u>, 25 Cal.3d 813, 849, 160 Cal. Rptr. 323, 603 P.2d 425 (1979) (Bird, C.J., dissenting). **Furthermore, contrary to appellants' implications, appellees' names and likenesses do not become copyrightable simply because they are used to identify the source of a copyrighted work. Therefore, their misappropriation claims do not fit the terms of § 301 preemption."**

<u>Brown</u>, 201 F.3d at 657 (emphasis added). For these reasons, the <u>Brown</u> court found no copyright preemption, then added, "We decline appellants' invitation to find name or likeness copyrightable simply because they are placed on CD's and tapes or in catalogs that have copyrightable subject matter recorded on them." <u>Id</u>, 201 F.3d at 659.

The <u>Brown</u> court next examined conflict preemption. First, that court noted, "The Supremacy Clause dictates that a state law that obstructs the accomplishment of the full purposes and objectives of congress is preempted." <u>Id</u>., 201 F.3d at 659-60; citing <u>Hines vs. Davidowitz</u>, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The <u>Brown</u> court next observed:

> "The major purpose of the Copyright Act is, as the Constitution states, "to promote the progress of Science and useful arts." U.S. Const., art. I, § 8, cl. 8. The legislative history of the Copyright Act describes several other objectives: 1) to promote national uniformity and avoid the difficulties of determining and enforcing rights under different state laws; 2) to have copyright protection last for a limited time period, so that scholars and the public can benefit from the dissemination of copyrighted materials; and 3) to improve our international dealings in copyrighted materials. See House Report at 132, reprinted in 1976 U.S.C.C.A.N. at 5745-46; see also <u>Goldstein vs. California</u>, 412 U.S. 546, 554-56, 93 S.Ct. 2303, 2308-10, 37 L.Ed.2d 163 (1973)."

<u>Brown</u>, 201 F.3d at 660. Considering the rule of conflict preemption and the purposes of the Copyright Act, the <u>Brown</u> court found no preemption as the state claims for violation of the right to privacy and publicity would not interfere with the Copyright Act. Specifically, the <u>Brown</u> court reasoned:

> "Although appellants argue vigorously that not preempting appellees' misappropriation claims would undermine the copyright system, several considerations belie this claim. First, the right of publicity that the misappropriation tort protects promotes the major

objective of the Copyright Act - to support and encourage artistic and scientific endeavors. Second, the record here indicates that industry practice may be to transfer rights in a performer's name or likeness when the copyright is transferred. If that is the case, right of publicity claims will rarely interfere with a copyright holder's use of the creator's name or likeness in connection with the copyright. Third, common law on the right of publicity appears ordinarily to permit an authorized publisher or distributor to use name or likeness to identify truthfully the author or creator of the goods. See Zim vs. Western Publishing Co., 573 F.2d 1318, 1327 (5th Cir. 1978) (holding that authorization to publish author's work provided implicit authorization to use author's name to identify work); Neyland vs. Home Pattern Co., 65 F.2d 363, 364 (2nd Cir. 1933) (holding that an implied license to use the name to sell goods arises if the goods have been sold or disposed of); Kamakazi Music Corp. vs. Robbins Music Corp., 534 F.Supp. 69, 77 (S.D.NY 1982) (holding that the right to use a composer's name or likeness accompanies the grant of the right to use the underlying compositions); Brinkley vs. Casablancas, 80 A.D.2d 428, 438 N.Y.S.2d 1004 (S.Ct. 1981) (holding that an unauthorized distribution of a model's name or likeness was actionable); Restatement (Third) of Unfair Competition Sec. 47, 2 J.Thomas McCarthy, The Rights of Publicity or Privacy § 7.4 (1999).

Only if states allowed similar claims against authorized publishers or distributors of a work (whether through copyright or the public domain) would the purposes and objectives of the Copyright Act be adversely affected. Such suits would interfere to some extent with the uniformity of the copyright system and the exploitation of works in the public domain. Currently, however, no state seems to have such a law, and the general rule is as described above. See McCarthy, supra, § 7.4. Thus, because the tort would currently not be sustainable against valid copyright holders, allowing the claim in this context does not impede the transfer of copyrights or the uniformity of the copyright system."

In Landham vs. Lewis Galoob Toys, Inc., 227 F.3d 619 (6th Cir. 2000), the Sixth Circuit reached the same conclusion as the Fifth Circuit reached in Brown, holding:

"Landham's claim is not preempted by the Copyright Act. The Supreme Court has recognized that rights of publicity are generally consistent with the Copyright Act. See Zacchini [vs. Scripps-Howard Broadcasting Co., 433 U.S.] at 577[, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977)]; see also Waits vs. Frito-Lay, Inc., 978 F.2d 1093, 1099-1100 (9th Cir. 1992) (citing Bonito Boats [vs. thunder Crafts Boats, Inc., 489 U.S. 141, 162, 103 L.Ed.2d 118, 109 S.Ct. 971 (1989)] and Zacchini). As long as a plaintiff states a claim of invasion of personal, state-law rights that are distinct from copyright protections, the claim will not be preempted. See Wendt vs. Host Int'l, Inc., 125 F.3d 806, 810 (9th Cir. 1997). Unlike the baseball player-plaintiffs in Baltimore Orioles, Inc. vs. Major League Baseball Players Assoc., 805 F.2d 663 (7th Cir. 1986), Landham is not claiming the right of publicity in order to gain rights in the telecast of his performance, or to contest Fox's right to create derivative works from its copyrighted work in general. Rather, he claims that the toy evokes his personal identity--an inchoate "idea" which is not amenable to

copyright protection--to his emotional and financial detriment. Regardless of the merits of this claim, it does assert a right separate from those protected by the Copyright Act. See Wendt, 125 F.3d at 809 (claim that animatronic robots "look like" plaintiff and thereby evoke his identity in violation of his right of publicity is not preempted)…"

Landhan, 227 F.3d at 623-24.

Based on a somewhat different analysis, the Ninth Circuit likewise reached the same conclusion in Downing vs. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001). The Ninth Circuit first recited the subject matter provision of the Copyright Act, 17 U.S.C. Sec. 102:

"(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include … musical works, including any accompanying word."

Id. Then, the Downing court recognized:

"The 'work' that is the subject matter of the right of publicity is the persona, i.e., the name and likeness of a celebrity or other individual. A persona can hardly be said to constitute a 'writing' of an 'author' within the meaning of the copyright clause of the Constitution. A fortiori it is not a" work of authorship" under the Act. Such name or likeness does not become a work of authorship simply because it is embodied in a copyrightable work such as a photograph."

Id., 265 F.3d at 1003-04; quoting 1 Nimmer on Copyright § 1.01[B][1][c] at 1-23 (1999). The same distinction, as the Downing court observed, is made in McCarthy's Treatise on Right of Publicity and Privacy:

"The 'subject matter' of a Right of Publicity claim is not a particular picture or photograph of plaintiff. Rather, what is protected by the Right of Publicity is the very identity or persona of the plaintiff as a human being ... While copyright in a given photograph may be owned by the person depicted in it, the exact image in that photograph is not the underlying 'right' asserted in a Right of Publicity case. To argue that the photograph is identical with the person is to confuse illusion and illustration with reality. Thus, assertion of infringement of the Right of Publicity because of defendant's unpermitted commercial use of a picture of plaintiff is not assertion of infringement of copyrightable 'subject matter' in one photograph of plaintiff."

Downing, 265 F.3d at 1004; quoting McCarthy, Rights of Publicity and Privacy § 11.13[C] at 11-72-73 (1997).

The Downing court concluded:

"We agree with the approach taken by the Fifth Circuit and the reasoning employed in KNB Enterprises [vs. Matthews, 78 Cal.App. 4th 362 (Ct. App. 2000)]. **The subject matter of Appellants' statutory and common law right of publicity claims is their names and likenesses. See Newcombe [vs. Adolf Coors Co., 157 F.3d 686,] at 691 [(9th Cir 1998)]. A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. Sec. 102. This is true not-withstanding the fact that Appellants' names and likenesses are embodied in a copyrightable photograph.** The same concept is specifically embodied in 17 U.S.C. Sec. 103 which provides that the copyright in derivative works extends only to the material contributed by the author as distinguished from preexisting material employed in the work."

Downing, 265 F.3d at 1004 (emphasis added).

The Seventh Circuit agreed in Toney vs. L'oreal USA, Inc., 406 F.3d 905 (7th Cir. 2004). That court held, **"Copyright laws do not reach identity claims such as Toney's. Identify as we have described it, is an amorphous concept that is not protected by copyright law; thus, the sate law protecting it is not preempted."** Id, 406 F.3d at 910 (emphasis added).

Restatement (Third) of Unfair Competition Sec. 46 Comment (i) summarizes:

"The 1976 Copyright Act protects 'original works of authorship fixed in any tangible medium of expression.' 17 U.S.C.A. Sec. 102(a). States are preempted from recognizing rights 'equivalent' to copyright in works 'within the subject matter' of the Copyright Act. Id. Sec. 301. **Personal identities and the indicia by which they are recognized, however, are not generally within the subject matter of copyright. No copyright can be obtained, for example, on a person's name, voice, or physical likeness.**"

Rest. (Third) of Unfair Comp. Sec. 46 Comment (i), p. 535 (emphasis added) (see copy attached hereto as "Exhibit 2").

Under these clear and consistent authorities, Plaintiff's claims for violation of his rights to privacy and publicity through unauthorized use of his name seek to enforce rights in Plaintiff's name and identity which are different and separate from copyrights in his music. For these reasons, Plaintiff's state law claims are not preempted by the Copyright Act.

### C. USE OF PLAINTIFF'S NAME ON PACKAGING<br>VIOLATES THE RIGHTS TO PRIVACY & PUBLICITY

Loose Cannon errantly relies on Restatement (Third) of Unfair Competition Sec. 47 Comment (a) in claiming that use of Plaintiff's name is informational, not for purposes of trade. However, Loose Cannon ignores the text of Sections 46 and 47 of Restatement (Third) of Unfair Competition. Section 46 provides:

> "One who appropriates the commercial value of a person's identity by using without consent the person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of the trade is subject to liability for the relief appropriate under the rules stated in Secs. 48 and 49."

Rest. (Third) of Unfair Comp. Sec. 46 (see copy attached as "Exhibit 3"). The related Section 47 defines "for purposes of trade" as:

> "**The name, likeness, and other indicia of a person's identity are used 'for purposes of trade' under the rule stated in Sec. 46 if they are** used in advertising the user's goods or services, or are **placed on merchandise marketed by the user**, or are used in connection with services rendered by the user. However, use 'for purposes of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses."

Rest. (Third) of Unfair Comp. Sec. 47 (emphasis added) (see copy attached hereto as "Exhibit 4"). Thus, "use in advertising" and "placement on merchandise" are disjunctive and alternative means of violating the rights to privacy and publicity. Also, contrary to Loose Cannon's assertion, and pursuant to Section 47, use in advertising apart from a product is not required.

Loose Cannon relies on Comment (a) to Section 47 which addresses "use in advertising," but fails to even mention the applicable Comment (b) to that Section which addresses "use on merchandise." The applicable Comment (b) clearly states, "The sale of merchandise bearing a person's name or likeness ordinarily constitutes a use of the identity for purposes of trade under

the rule stated in Sec. 46." Rest. (Third) of Unfair Comp. Sec. 47, Comment (b) (see copy attached hereto as "Exhibit 5).

In Cummings vs. Sony Music, 2003 U.S. Dist. Lexis 15007 (S.D.NY 2003) (see copy attached as "Exhibit 6"), which follows the Restatement (Third) of Unfair Competition Sec. 47, the court found that "by placing plaintiff's likeness, without his permission, on merchandise marketed by" Sony, the defendant has publicly used plaintiff's photograph for commercial purposes." Cummings, 2003 U.S. at *14.

In Gritzke vs. M.R.A. Holding, LLC, 2003 U.S. Dist. Lexis 9307, at *3 (N.D.FL 2003) (see copy attached as "Exhibit 7"), the court determined that the plaintiff "squarely alleged" that defendant published her photograph for commercial and advertising purposes by including such photograph on the package of defendant's videotape. Id. at *3.

In Brown, supra, the court recognized claims for violation of the rights to privacy and publicity based on use of the plaintiffs' names on CD's and tapes containing allegedly infringed music. Id.

Under these authorities, Plaintiff's claims for violation of his rights to privacy and publicity are properly based on use of his name on the packaging of Loose Cannon's merchandise.

### D. PLAINTIFF DOES NOT ALLEGE "REVERSE PASSING OFF"

Loose Cannon argues, based on Dastar Corp vs. Twentieth Century Fax Film Corp., 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003) and other cases, that Count VIII should be dismissed as a claim for "reverse passing off" which is preempted under either or both the Lanham Act, 15 U.S.C. Sec. 1051 et seq, or the Copyright Act. In Dastar, the Supreme Court found that a claim for "reverse passing off," meaning the producer misrepresents someone else's

11

goods or services as his own, is preempted under the Lanham Act, 15 U.S.C. Sec. 1051, et seq. However, while Plaintiff here alleges his name was used without authorization in violation of his rights to privacy and publicity, Plaintiff does not allege "reverse passing off" or that the producer of "Hairdo U" misrepresented Plaintiff's musical compositions or other goods or services as the producer's own. Thus, Loose Cannon's argument regarding preemption of a claim for "reverse passing off" is simply based on mischaracterization of Count VIII and should therefore be rejected.

E. **LOOSE CANNON'S KNOWLEDGE AND FAULT ARE IMMATERIAL**

Loose Cannon argues for dismissal of Plaintiff's claim based on its lack of knowledge of unauthorized use. However, Loose Cannon raises a factual matter beyond the pleadings, specifically the substance and timing its knowledge and fault, but Loose Cannon provides no affidavit nor other factual support for its contention.

Loose Cannon, presumably unable to find supporting authority pertaining to right to privacy and publicity torts, attempts to borrow defamation law. However, as Comment (e) to Restatement (Third) of Unfair Competition Sec. 46, entitled "Intent," expressly recognizes, "Unless required by an applicable statutory provision, an intent to infringe another's right of publicity is not an element of liability… Similarly, a mistake regarding the plaintiff's consent is not a defense." Id., p. 532. (see copy attached hereto as "Exhibit 8").

The Reporter's Note following Comment (e) further explains:

"[T]he constitutional requirement of fault applicable in certain defamation actions has not been applied to the right of publicity. Hustler Magazine, Inc. vs. Falwell, 485 U.S. 46, 52, 108 S.Ct. 876, 880, 99 L.Ed.2d 41 (1988), which interpreted Zacchini vs. Scripps-Howard Broadcasting Co., 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), as "ruling that the 'actual malice' standard does not apply to the tort of appropriation of a right of publicity. See, e.g., National Bank of Commerce vs. Shaklee Corp., 503 F.Supp. 533 (W.D.TX 1980)."

Rest. (Third) of Unfair Comp. Sec. 46 Comment (e) case citations, p. 542 (see copy attached as "Exhibit 9"); also see, e.g., Rosenberg vs. Lee's Carpet & Furniture Warehouse Outlet, Inc., 80 Misc.2d 479, 363 N.Y.S.2d 231 (Sup. Ct. 1974) (damages awarded against an innocent newspaper).

Clearly, the elements of the right to privacy and publicity torts for unauthorized use of name, identity, and likeness, as expressly set forth by the Missouri Supreme Court in Twist, do not encompass knowledge, fault or scienter. Id., 110 S.W.3d at 368-69.

Finally, contrary to Loose Cannon's assertion, encouraging distributors to check whether authorization for use of name, image and / or likeness prior to distributing a product, rather than permitting them to blindly distribute whatever they acquire, will discourage, and likely curtail, violations of such rights.

### III. CONCLUSION

Loose Cannon's motion to dismiss counts V and VIII should be denied in full as (1) embarrassment is not an element of the claims, (2) Plaintiff's claims are not preempted under the Copyright act as such claims seek to enforce separate and different interests, (3) use of Plaintiff's name on packaging violated the rights to privacy and publicity, (4) Plaintiff does not allege "reverse passing off," and (5) Loose Cannon's knowledge and fault are immaterial at this stage.

    Respectfully submitted,

    POTASHNICK LAW FIRM

    _____
    Mark Potashnick, E.D. MO # 35970
    111 Westport Plaza, Suite 600
    St. Louis, Missouri 63146
    Telephone: (314) 275-9150

Facsimile: (314) 275-9151

Attorney for Plaintiff Chad Evans

**CERTIFICATE OF SERVICE**

    The foregoing Plaintiff's Memorandum in Opposition to Defendant Loose Cannon Films, Inc.'s Motion to Dismiss Counts V and VIII was served on Defendant York Pictures, Inc., 4565 Sherman Oaks Avenue, Sherman Oaks, California, 91403, by U.S. Mail, correctly addressed and postage prepaid, on attorney of record for Defendant Loose Cannon Films, Inc., Mark Sableman, Thompson Coburn LLP, One U.S. Bank Plaza, St. Louis, Missouri, 63101, by electronic filing, and on attorney of record, Kenneth Lander, Kortenhof & Ely, P.C., 1015 Locust Street, Suite 500, St. Louis, Missouri, 63101, by electronic filing on the date reflected in the court's electronic filing records.

                                                     /s Mark Potashnick